Robert M. Dinkel v. Commissioner.
Dinkel v. Commissioner
Docket No. 67679.
United States Tax Court
T.C. Memo 1960-79; 1960 Tax Ct. Memo LEXIS 209; 19 T.C.M. (CCH) 420; T.C.M. (RIA) 60079; April 25, 1960
*209 1. Held, on authority of Putnam v. Commissioner, 352 U.S. 32, that the loss which petitioner incurred in discharging his obligation to a bank, as guarantor of the note of a corporation of which he was a stockholder, constitutes a loss on a nonbusiness bad debt within the meaning of section 23(k)(4) of the 1939 Code, and is deductible only as a short-term capital loss. 2. Held, that petitioner's failure to file a declaration of estimated tax was not due to reasonable cause within the meaning of section 294(d)(1)(A); and that an addition to tax under said section was properly imposed. 3. Held, that where petitioner filed a separate income tax return for the taxable year, he is not entitled to have his tax computed as though he had filed a joint return with his wife; for he and his wife did not subsequently file a joint return, as permitted by section 51(d)(1), and under the limitations provided in section 51(g)(3), they may no longer do so. Charles T. Boyd, Esq., Box 127, Greensboro, N.C., for the petitioner. Paul J. Weiss, Jr., Esq., for the respondent. PIERCE Memorandum Opinion PIERCE, Judge: The respondent determined for the year 1953: A deficiency in the income tax of petitioner, in the amount of $15,846.54; and addition to tax under section 294(d)(1)(A) [1] for failure to file a declaration of estimated tax, in the amount of $789.92; and an addition to tax under section 294(d)(2), for substantial underestimate of estimated tax in the amount of $526.62. *211 The issues for decision are: [2]
(1) Whether a loss of $24,820.37 which the petitioner sustained in the taxable year in discharging his obligation to a bank, as guarantor of the note of a corporation of which he was a stockholder, is fully deductible under section 23(e)(2) as a loss incurred in a transaction entered into for profit not connected with his trade or business; or whether such loss constitutes a nonbusiness bad debt loss which, under section 23(k)(4), is deductible only as a short-term capital loss. (2) Whether petitioner's failure to file a declaration of estimated tax was due to reasonable cause, within the meaning of section 294(d)(1)(A). (3) Whether petitioner, who filed a separate income tax return for the year involved, is entitled to have his tax computed as though he had filed a joint return with his wife. All the facts were stipulated, and are so found. Such facts may be summarized as follows. Petitioner, at all times material, was married. He filed a separate income tax return for the year involved, with the district director of internal revenue at Greensboro, *212 North Carolina. No declaration of estimated tax for said year was filed. In December 1950, petitioner and three other individuals named Thomas S. Callendar, Joseph P. Marus and Aldo F. Marus, organized a North Carolina corporation to engage in the manufacture and sale of metal products. The corporation was named North Carolina Metal Products Company; and its principal office was in High Point, North Carolina. Petitioner was an officer and director, and also the holder of approximately one-fourth of the shares of capital stock. His participation in the corporation, and all his actions in connection therewith, were with a view to profit not connected with his trade or business. Upon organization of the corporation, arrangements were made with the Wachovia Bank & Trust Company of Winston-Salem, North Carolina, to extend credit to the corporation up to the amount of $300,000, with the money to be advanced to the corporation as needed. In this connection, separate guaranty agreements were made with the bank by petitioner and his wife, Joseph Marus and his wife, and Aldo Marus and his wife, respectively. The agreement executed by petitioner and his wife was dated December 22, 1950; *213 and it provided, so far as here material, as follows: "GUARANTY AGREEMENT "WHEREAS, the undersigned [Robert M. Dinkel and Eileen B. Dinkel] has requested Wachovia Bank and Trust Company (herein called Wachovia) to extend credit to North Carolina Metal Products Company (herein called the Borrower) and Wachovia has extended credit and/or may in the future extend credit by reason of such request and in reliance upon this guaranty; "NOW, THEREFORE, in consideration of such credit extended and/or to be extended in its discretion by Wachovia to the Borrower, the undersigned (who, if two or more in number, shall be jointly and severally bound) hereby unconditionally guarantees to Wachovia and its successors, endorsees and assigns the punctual payment when due, with such interest as may accrue thereon either before or after any maturity (ies) thereof, of all debts and obligations of the Borrower or of the Borrower and any other party or parties, now existing or hereafter arising, * * * all of which are hereinafter referred to as 'debts of the Borrower'; provided, however, the liability of the undersigned hereunder shall not exceed at any one time a total of "Three Hundred Thousand *214 and no/100 - Dollars ($300,000.00). * * * "This is a guaranty of payment and not of collection. The liability of the undersigned on this guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against the Borrower or any other person, nor against securities or liens available to Wachovia, its successors, endorsees or assigns. The undersigned waives any right to require that an action be brought against the Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Wachovia in favor of the Borrower or any other person." * * *
By June 26, 1951, the bank had disbursed for the benefit of the corporation, a total of $300,000; and at that time, the corporation executed and delivered to the bank its corporate note for said amount. This note was secured, not only by the three above-mentioned guaranty agreements, but also by the following: A chattel mortgage covering all machinery and equipment of the corporation, which was executed and delivered to the bank under date of June 26, 1951; and United States Treasury notes in the amount of $100,000, *215 which were deposited jointly by petitioner, Aldo Marus, and Joseph Marus. The corporation was not successful in its operations. On November 1, 1951, the above-mentioned Treasury notes which the bank held as security, matured; and thereupon, the bank collected the proceeds of these notes in the amount of $100,000, and applied the same in partial satisfaction of the corporation's indebtedness. On October 19, 1952, the bank instituted a suit in a North Carolina court against the corporation and the makers of the three above-mentioned guaranty agreements, in which it sought recovery of the then remaining balance on the corporation's note ($200,986.70 and interest), and also foreclosure of the aforesaid chattel mortgage. After the filing of such suit by the bank, and during the pendency thereof, the following occurred: 1. On about December 4, 1952, the assets and stock of the corporation were sold by agreement of all parties to the suit, to a Massachusetts partnership for $105,000; and this amount was thereupon paid to the bank and applied by it against the corporation's indebtedness. In order to permit the vendee of said properties to acquire clear title, the bank, acting in accordance *216 with the request of all the guarantors, released the corporation from further liability on its note, dismissed the corporation as a party to the pending suit, and canceled the aforesaid chattel mortgage. The bank did not release any of the guarantors; nor did it dismiss them as parties to the pending suit. After application of the above-mentioned $105,000, the unsatisfied balance of the indebtedness was $95,986.70 plus interest. 2. On about March 4, 1953, Aldo and Joseph Marus and their wives paid to the bank pursuant to their guaranty agreements, two-thirds of said unsatisfied indebtedness. 3. On May 2, 1953, the bank obtained judgment in said suit against petitioner and his wife on their separate guaranty agreement, for principal and interest in the aggregate amount of $35,175.19. None of the three groups of guarantors made any defense to the bank's claims on the guaranty agreements; and the only issue litigated pertained to the respective amounts to be paid by the various guarantors. During the taxable year 1953 here involved, petitioner paid to the bank, pursuant to the judgment obtained on the guaranty agreement of him and his wife, the amount of $24,820.37 principal and *217 $3,179.63 interest, or a total of $28,000. On petitioner's separate income tax return for said year, he deducted said $28,000 in full, as a loss under section 23(e)(2) (a loss incurred in a transaction entered into for profit, though not connected with his trade or business). The respondent however, in his notice of deficiency, determined that said loss resulted from a nonbusiness bad debt within the meaning of section 23(k)(4), and was deductible only as a short-term capital loss. The respondent has now conceded on brief, that the above-mentioned "interest" in the amount of $3,179.63, is fully deductible as such. Accordingly, the present controversy is narrowed to the question of how the loss which petitioner incurred in respect to the principal amount of $24,820.37 should be treated for income tax purposes. This question, which is the principal issue here presented for decision, is substantially the same as that decided by the Supreme Court in , affirming (C.A. 8), which in turn affirmed a Memorandum Opinion of this Court [; . In that case the taxpayer, *218 like the petitioner herein, had incurred a loss in discharging his obligation to a bank, as guarantor of notes of a corporation of which he was a stockholder; and in that case, like the present, the issue was whether the taxpayer's loss was deductible in full under section 23(e)(2); or whether it represented a loss incurred on a nonbusiness bad debt within the meaning of section 23(k)(4), which was deductible only as a short-term capital loss. The Supreme Court held that the loss was deductible only as a nonbusiness bad debt. It stated, in part: "The objectives sought to be achieved by the Congress in providing short-term capital loss treatment for nonbusiness bad debts are * * * persuasive that § 23(k)(4) applies to a guarantor's nonbusiness debt losses. * * * His [Putnam's] venture into the publishing field was an investment apart from his law practice. The loss he sustained when his stock became worthless, as well as the losses from the worthlessness of the loans he made directly to the corporation, would receive capital loss treatment; the 1939 Code so provides as to nonbusiness losses both from worthless stock investments and from loans to a corporation, whether or not the *219 loans are evidenced by a security. It is clearly a 'fairer reflection' of Putnam's 1948 taxable income to treat the instant loss similarly. There is no real or economic difference between the loss of an investment made in the form of a direct loan to a corporation and one made indirectly in the form of a guaranteed bank loan. The tax consequences should in all reason be the same, and are accomplished by § 23(k)(4). * * *" The court further stated in footnote 21 to the above statement: "Upon this ground, contrary to the holding in , the guarantor's nonbusiness loss would receive short-term capital loss treatment despite the nonexistence of the debtor at the time of the guarantor's payment to the creditor." In the instant case, the issue here considered is not distinguishable in principle from the issue decided in the Putnam case. In our view, after giving consideration to the above-quoted footnote 21, it is not here significant that the bank, acting in accordance with the request and agreement of all parties involved, released its claims against the corporation. We decide this first issue for the respondent, *220 on authority of the Putnam case. The second issue for decision is whether petitioner's failure to file a declaration of estimated tax was due to reasonable cause, within the meaning of section 294(d)(1)(A). As to this issue, no facts were established by the evidence; but petitioner's counsel has argued on brief, that the addition to tax should not be imposed because the amount of tax withheld from petitioner's salary was more than the amount of tax which he expected to be due. Such contention however, even if proven, would not provide an adequate defense. Section 58 (a)(1) of the Code required, for the year here involved, that every individual (with certain exceptions not here material) should make a timely declaration of estimated tax, if his gross income from wages could reasonably be expected to exceed the sum of $4,500 plus $600 for each exemption (which, in petitioner's case, would have been a total of $8,100). Actually, petitioner's gross income from wages for the taxable year was $43,674.42; and there is no evidence or indication that he could not reasonably have expected to receive wages in excess of $8,100. We hold that respondent did not err in imposing an addition to tax *221 under section 294(d)(1)(A). . The final issue for decision is, whether petitioner is entitled to have his income tax computed as though he had filed a joint return with his wife, notwithstanding that the only return which he filed was a separate return. Section 51(g)(1) of the Code permits an individual who has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse, to make a joint return with his spouse for such taxable year, even though the time for filing a return for such year has expired. However, such permission is subject to certain conditions and limitations, among which are the following set forth in section 51(g)(3): "(3) Time for Making Joint Return. - A joint return cannot be made under paragraph (1) - "(A) after the expiration of three years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse); [or] "(B) after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 272(a), if the spouse, as to such notice, *222 files a petition with the Tax Court of the United States within the time prescribed in such section;" * * *
Here, the petitioner and his wife did not meet these conditions. They did not file a joint return at any time; and, under the above-quoted statute, they may no longer do so. There is no question that the only return filed was a separate return; and petitioner has presented no evidence that he and his wife actually intended such separate return to be a joint return. We hold that petitioner is not entitled to have his tax computed as though a joint return had been filed. Decision will be entered under Rule 50. Footnotes
1. All Code references herein are to the Internal Revnue Code of 1939.↩
2. All other issues raised by the pleadings were conceded by respondent in his brief.↩